**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timmy Cooper,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-24-00218-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Timmy Cooper's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Cooper filed a Complaint (Doc. 1) and an Opening Brief (Doc. 12) seeking judicial review of that denial. Defendant SSA filed a Response Brief (Doc. 14), to which Cooper replied (Doc. 15). The Court, having reviewed the parties' briefs, the Administrative Record (Docs. 7–11), and the Administrative Law Judge's ("ALJ") decision (Doc. 8-3 at 2–16), will affirm the ALJ's decision.

**I.     BACKGROUND**

Cooper, born in 1976, was a service technician and plumber by trade. (Doc. 7-3 at 29; Doc. 7-6 at 2.) Cooper first applied for SSDI benefits on December 21, 2018 for an alleged disability that prevented him from working beginning on August 1, 2016. (Doc. 7-6 at 2.) Cooper alleged that he suffered from the following medical conditions: (1) degenerative disc disease from four back surgeries; (2) carpal tunnel; (3) diabetes; and (4) depression. (Doc. 7-7 at 6, 25–27.) The date he was last insured for SSDI benefits was

December 31, 2021. (Doc. 7-4 at 4.)

On November 19, 2020, ALJ Jeannine Lesperance found Cooper not disabled. (Doc. 7-3 at 30.) Following Cooper's request for review, the Appeals Council denied his request on August 10, 2021. (*Id.* at 2.) Cooper proceeded to file a complaint in this Court. (Doc. 8-4 at 31–32.) The Court reversed ALJ Lesperance's decision and remanded the matter back for further proceeding because ALJ Lesperance failed to provide sufficient reasons for discrediting Cooper's symptom testimony. (*Id.* at 33–49.) The Appeals Council remanded the matter to an ALJ for a new hearing. (*Id.* at 51–51.) On December 1, 2023, ALJ Laura Speck Havens issued a decision, finding that Cooper was not disabled. (Doc. 8-3 at 2–16.) That decision became the SSA's final order for which Cooper now seeks review in this Court. (Doc. 1.)

## II. LEGAL STANDARD

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). For claims filed on or after March 27, 2017, an ALJ no longer is required to defer to or assign a medical opinion a specific evidentiary weight. 20 C.F.R. § 404.1520c(a). The new regulations require the ALJ to articulate the degree of persuasiveness of the medical opinion or administrative findings, based on enumerated factors, with the most important being supportability and consistency. *Id.* § 404.1520c(a)–(b); *see also id.* § 404.1520c(c)(1)–(5) (listing the factors). Supportability refers to the extent the medical source supports the medical opinion by explaining the medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Consistency refers to the extent the medical opinion is consistent with the evidence from other sources. *Id.* at 792.

The Court may set aside a disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which

- 2 -

supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.   DISCUSSION**

To determine whether a claimant is disabled for purposes of the Act, an ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the SSA at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**A.   ALJ Havens' Decision**

ALJ Havens found that Cooper did not engage in substantial gainful activity between the time his disability began and the date he was last insured. (Doc. 8-3 at 7.) Through the date Cooper was last insured, ALJ Havens found he had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and carpal tunnel syndrome. (*Id.* at 8.) ALJ Havens further found that Cooper was able to control his other ailments, including his diabetes and hypertension, with medications and only caused

minimal limitations, thus non-severe. (*Id.*; *see also* Doc. 7-9 at 66.) The ALJ also found that, although 2019 to 2020 records indicated included a diagnosis for anxiety and depression, mental impairments were not supported by any clinical findings. (Doc. 8-3 at 8.) In doing so, ALJ Havens concluded that consulting and state psychologists' opinions were persuasive because they were consistent with the medical evidence as a whole, which showed that from 2017 to 2020 normal psychiatric findings and that some of his behavior health reports related to substance abuse issues occurring in 2019 to 2020. (*Id.*; *see also* Doc. 7-4 at 13, 37; Doc. 7-9 at 61–62; Doc. 8 at 55, 64–70; Doc. 8-2 at 6; Doc. 9-1 at 13–15.)

Next, ALJ Havens found Cooper's impairments did not equal the severity of those listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 based on state and consulting examiners' findings that were not consistent with finding a listing-level impairment. (Doc. 8-3 at 8–9.) Next, ALJ Havens found Cooper's RFC as follows:

> [Cooper] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand six hours out of an eight-hour workday, walk six hours in an eight-hour workday and sit six hours out of an eight-hour workday, except he could no more than occasionally climb, stoop, kneel, crouch and crawl; occasionally reach in all directions bilaterally; frequently perform gross handling, fine feeling and fine fingering bilaterally; and occasionally tolerate exposure to heights, moving machinery, temperature extremes and vibrations.

(*Id.* at 9.) To reach her RFC determination, ALJ Havens evaluated Cooper's symptom testimony in which he alleged that his pain impacted his ability to focus, work, lift and carry heavy objects, walk more than a short distance, and sit longer than forty-five minutes, and his pain also caused him to have low energy and to lie down frequently. (*Id.*) She concluded that, although Cooper's impairments could cause his symptoms, e.g., pain from his surgeries, carpal tunnel, pain in his joints and left arm, and numbness in his hands, Cooper's statements about the severity were not consistent with the medical evidence and other evidence in the record. (*Id.* at 9–10.) Specifically, medical records showed Cooper had some limitations in movement and experienced pain but that his strength and sensation remained intact and medications, treatments, and physical therapy improved his symptoms.

1  (*Id.* at 10–11.) ALJ Havens also noted that Cooper testified that he was able to tend to his
2  personal care, although had some trouble putting on his shoes, cared for his pets, including
3  walking them for up to an hour, cleaned his living space, cooked meals, drove for errands,
4  handled his finances, and regularly socialized, which did not support the proclaimed
5  severity of Cooper's pain and depression. (*Id.* at 11–12.)

6  Next, ALJ Havens found that Cooper was unable to perform his past relevant work
7  as a service technician and plumber based on a vocational expert's testimony. (*Id.*
8  at 14–15.) Also, based on that vocational expert's testimony, ALJ Havens found that
9  Cooper could perform light work and there were light and unskilled jobs available in
10 significant numbers that he could perform. (*Id.* at 15–16.) Thus, ALJ Havens concluded
11 that Cooper is not disabled. (*Id.* at 16.)

12 **B.     Analysis**

13 Cooper presents four issues for the Court's review: Did ALJ Havens improperly (1)
14 fail to address medical opinions or provide adequate justification for not including
15 limitations disclosed in those medical opinions in her RFC finding; (2) reject Cooper's
16 symptom testimony; (3) reject lay witness testimony; and (4) rely on vocational testimony?
17 (Doc. 12 at 2.) As the Court will explain, the answer to all four is no—there was no error.

18 **1.     Medical Opinions**

19 Cooper argues that ALJ Havens improperly and inaccurately discounted Physical
20 Therapist Everett Young's opinion in finding Young's opinion unpersuasive. (Doc. 12
21 at 10–15.) Cooper further argues that ALJ Havens' treatment of Nurse Practitioner
22 Roxanna Donan's opinion was not supported with adequate rationale. (*Id.*) In response,
23 SSA argues the "law of the case" doctrine should bar Cooper's challenge to ALJ Havens'
24 treatment of Young's opinion because this Court previously found ALJ Lesperance
25 reasonably found the opinion unpersuasive. (Doc. 14 at 2.) Next, SSA argues ALJ Havens
26 adequately discounted Donan's opinion because, in viewing her decision in full, the
27 opinion is inconsistent with the other medical evidence. (*Id.* at 4–7.) In reply, Cooper
28 argues the "law of the case" doctrine in inapplicable based on the Court's previous

disposition of the case under 45 U.S.C. § 405(g), and even if it is, ALJ Havens is a new ALJ considering new evidence. (Doc. 15 at 1–3.) Cooper also maintains that ALJ Havens failed to support discrediting Young's opinion, especially in light of the vocational expert opining that the limitations identified in Young's opinion would preclude Cooper's ability to gain competitive employment. (*Id.* at 3–4.) Cooper further argues that ALJ Havens failed to address the supportability and consistency factors necessary to discredit Young's opinion, as well as Donan's, and SSA conceded as much with respect to Donan. (*Id.* at 4–5.)

### i. The "Law of the Case" Doctrine

Cooper is right that the "law of the case" doctrine is inapplicable here. The "law of the case" doctrine generally prohibits a court from reconsidering an issue already decided by the same court in the same case. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). This Court's disposition in the prior to case to reverse ALJ Lesperance's decision and remand for further proceedings was a final judgment and resulted in termination of the case. *See Cooper v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01676-PHX-DWL, 2022 WL 16757504, at *9 (D. Ariz. Nov. 8, 2022). Cooper now seeks review of a ALJ Havens' decision, which the Court reviews as a separate piece of litigation. *See Shalala v. Schaefer*, 509 U.S. 292, 297, 299 (1993). Therefore, the "law of the case" doctrine does not bar Cooper's challenge regarding Young's opinion.

### ii. Young's Opinion

In August 2020, Young completed a physical evaluation of Cooper based on his lower back pain and failed back surgery syndrome. (*See* Doc. 8 at 58–60.) Young estimated that Cooper could only work 25–30 hours a week due to his chronic back pain and weakness. (*Id.*) Young also noted that Cooper could only stand or sit for up to one hour at a time and a total of four hours for each during a workday. (*Id.*) Young further noted that Cooper could occasionally bend, squat, crawl, climb, and reach, but could not lift more than twenty pounds occasionally. (*Id.*) Young estimated that Cooper's impairments would likely cause him to miss work more than four days per month. (*Id.*)

1  Based on Young's opinion, ALJ Havens found:

> The undersigned finds unpersuasive the August 2020 opinion of a physical therapist that the claimant was limited to less than sedentary work in that he could lift 20 pounds occasionally and 10 pounds frequently, stand, walk and sit two hours each in an eight-hour day, occasionally bend, squat, crawl, climb and reach, had moderate restriction of activities involving unprotected heights, being around moving machinery and providing consistent work effort, and was likely to be absent from work as a result of his impairments or treatment more than four days per month (Exhibit 22F). The assessment is brief and conclusory in form, with little in the way of clinical findings to support its conclusion. In addition, he related his opinion to February 2016 but reported treating the claimant on and off only from 2018, and the medical records show little evidence that he personally treated the claimant (Exhibit 22F, p. 2; *see, e.g.*, Exhibits 1F, pp. 3, 9; 2F, p. 1; 29F, p. 9; 40F). Further, an administrative law judge may permissibly reject a check off report that does not contain any explanation of the basis of its conclusions.

(Doc. 8-3 at 13.)

ALJ Havens evaluated Young's opinion in the context of her determining the persuasiveness of medical opinions with respect to Cooper's limitations and ability to work. (*See id.* at 12–13.)  ALJ Havens appears to justify discrediting Young's opinion that Cooper was limited to less than sedentary work because Young also made findings that he could lift twenty pounds occasionally, ten pounds frequently, sit and walk throughout the day, and perform various movements occasionally.  But Young opined that Cooper's impairments prevent him from working on a full-time basis. *Cf.* 20 C.F.R. § 404.1567(a) (describing "sedentary work" as involving lifting no more than ten pounds at a time, sitting, and walking and standing occasionally).  ALJ Havens' interpretation of Young's opinion as precluding any sedentary work is rational because the opinion lacks detailed explanations to limit the type of work Cooper's impairments prevented him from completing. *See Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) (noting courts will uphold an ALJ's decision if the "evidence is susceptible to more than one rational interpretation"). ALJ Havens goes on to explain the lack of clarity by criticizing Young's opinion for being brief, conclusory, and lacking clinical findings to support the conclusion. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (explaining that an ALJ may reject "check-off reports" do not contain explanations for their conclusions and may take into account the quality of the explanation in determining how much weight to afford to an opinion).  ALJ Havens'

supportability analysis goes directly to the Young's evidentiary support for her medical opinions. *See* 20 C.F.R. § 404.1520c(b)(2). Therefore, there was no error.

Isolating the single paragraph discussing Young's opinion gives the illusion that ALJ Havens did not consider the consistency factor. The regulations, however, do not demand articulation for each medical opinion from one medical source individually. *Id.* § 404.1520(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). The analysis flows from a consideration of the relevant medical evidence that is consolidated into a single analysis. *Id.* ("[W]e will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section."). ALJ Havens' analysis immediately preceding her evaluation of Young's opinion addresses medical opinions that Cooper can complete light work and the perform the physical movements associated with that work, e.g., lifting up to twenty pounds and frequently carrying objects weighing ten pounds. *See, e.g.*, *id.* § 404.1567(b) (describing "light work" requirements). In fact, ALJ Havens' found a doctor's prior medical opinions that Cooper was physically more capable than what the doctor opined to in his most recent opinion partially persuasive but less consistent than the most recent. (*See* Doc. 8-3 at 13.) Therefore, read in context, ALJ's Havens evaluation of Young's opinion necessarily involves a balancing of the medical evidence that supports the medical opinions and the consistency of the conclusions in those opinions. There was no error here.

### iii. *Donan's Opinion*

In January 2021, following a physical capacities evaluation, Donan opined that Cooper could frequently lift up to five pounds, but only occasionally lift up to ten pounds, never more, and could only stand for up to an hour. (*See* Doc. 8-9 at 79.) Donan further provided that Cooper could never squat, crawl, or climb, and could only occasionally bend or reach. (*Id.*) Donan also noted that Cooper pain symptoms had a moderately severe effect on his ability to perform work related tasks. (*Id.* at 80.) Donan concluded that

Cooper would have to miss more than four days of work a month and was unable to sustain a full-time work schedule. (*Id.*) Based on Donan's opinion, ALJ Havens stated:

> The undersigned finds unpersuasive the January 2021 opinion of an unclearly identified source that the claimant was limited to less than sedentary work in that he could lift 10 pounds occasionally and less than five pounds frequently, stand one hour in an eight-hour day, frequently perform simple grasping and gross and fine manipulation bilaterally, never squat, crawl or climb, occasionally bend and reach, was severely limited in his ability to pay attention, maintain interpersonal relationships with supervisors, coworkers or the public, and was likely to be absent from work as a result of his impairments or treatment more than four days per month (Exhibit 30F, pp. 48-49). The source related her opinion to December 2020, when she saw the claimant on two occasions only, and offered no explanation for the bases of her assessment except pain (*id.*).

(Doc. 8-3 at 14.)

Cooper points to Donan's notation of the medical codes ascribed to thoracic and lumbar spine conditions, which evidently caused the pain symptoms. (Doc. 12 at 14.) He also points to Donan's note from February 3, 2021, where Cooper indicated he had a medial branch block performed but had worsening pain in his cervical area, and so, Donan referred him to a neurosurgeon for evaluation of is his cervical spine. (*Id.*; *see also* Doc. 8-9 at 61.) Cooper suggests that Donan's initial opinion and the referral show his condition worsened after the initial visits, of which ALJ Havens inadequately evaluated. (Doc. 15 at 5.) Cooper's inference is misguided. ALJ's Havens specifically addressed Cooper's medial branch block, finding that Cooper indicated the treatment provided significant pain relief for his neck and sought a second round. (Doc. 8-3 at 11; *see also* Doc. 10-2 at 10, 38, 41.) Cooper would also go on to have additional procedures performed that provided him significant continued pain relief. (*See* Doc. 10-2 at 51, 55, 58.)

Donan essentially filled out the same checklist form as Young. (*See* Doc. 8-9 at 79–80.) Donan, however, left the space for explanation of the limitations on Cooper's ability to work full time blank. (*See id.*) Donan's opinion was based on the reported pain without any clinical evidence to support the ultimate conclusion that Cooper could not perform full-time work. The issues here are the same as with ALJ Havens' treatment of the Young opinion—her critiques are that Donan failed to support the conclusion.

Therefore, supportability is likewise not basis for the Court to find error. *Ford*, 950 F.3d at 1155. And in the context of her determination, Donan's opinion is inconsistent with the other medical evidence in the record. *See* 20 C.F.R. § 404.1520c(b)(1). The issue is not that Cooper has no limitations whatsoever, the issue is that Donan's opinion as to the severity of Cooper's limitations lacks factual support and inconsistent with the other medical evidence demonstrating that he could perform light work. Thus, ALJ Havens did not error in evaluating Donan's opinion.

## 2. Symptom Testimony

ALJ Havens provided an overview of Cooper's symptom testimony:

> In addition to the allegations discussed above under Finding #3, the claimant alleges that he was limited in his ability to work by constant pain from four back surgeries, bulging discs in the neck with increasing pain and nerve displacement requiring surgery, carpal tunnel syndrome, and gradually increasing pain in all joints and the left arm as well as numbness in the hands and right leg. He alleged that he could lift and carry no more than 25 pounds due to increased pain, walk a couple hundred yards at a time, sit 45 minutes, had very little energy, and had to lie down after prolonged activity to relieve pain.[1]

(Doc. 8-3 at 9 (internal citations omitted).) Based on this testimony, ALJ Havens found that Cooper's statements concerning the intensity, persistence, and limited effects of the symptoms were not consistent with the record. (*Id.* at 10.) ALJ Havens highlighted various treatments and procedures that improved his symptoms and tests that showed moderate limitations but not the degree for which Cooper complained. (*Id.* at 9–11.) ALJ Havens also noted evidence of Cooper's daily activities did not support the extent of his self-proclaimed limitations. (*Id.* at 11–12.)

Cooper faults the determination for not identifying the specific testimony ALJ Havens found not credible and for not containing clear and convincing reasons to support rejecting his testimony. (Doc. 12 at 15–18.) In doing so, Cooper criticizes ALJ Havens for mischaracterizing his symptom testimony as an "inability to perform all work activity." (*Id.*; *see also* Doc. 8-3 at 10.) SSA disagrees, reiterating many of ALJ Havens' findings. (Doc. 14 at 3–4.)

---

[1] The findings under #3 appears to refer to Cooper's allegations of depression, diabetes, and hypertension. (Doc. 8-3 at 8.)

In the same breath that Cooper criticizes ALJ Havens of mischaracterizing his symptom testimony without specifying the testimony she found not credible, Cooper reiterates the testimony that ALJ Havens addressed. Specifically, Cooper indicates "he has never stated that he is unable to perform 'all work activity.' Cooper's testimony was that he could not sit or stand for long enough, lift enough weight, or maintain focus well enough to perform work activity on a regular and continuing full-time basis." (Doc. 12 at 16.) As noted above, ALJ Havens specifically highlighted Cooper's ailments and that Cooper alleged that he could not carry more than twenty-five pounds, walk more than a few hundred yards, sit longer than forty-five minutes, and had to lie down for prolonged periods due to the pain. ALJ Havens further cites "Testimony of Timmy Lee Cooper" following his allegations. (*See* Doc. 8-3 at 9.) This citation, while not an example of precision, adequately directed the Court to Cooper's testimony, which supports Cooper's allegations that ALJ Havens addressed. (*See* Doc. 7-3 at 41–54; Doc. 8-3 at 31–49.)

The Court finds that ALJ Havens articulated clear and convincing reasons for discrediting Cooper's symptom testimony. Regarding lumbar pain, ALJ Havens specifically pointed to medical evidence showing that, while Cooper had mobility limitations, he retained strength and maneuverability and treatments improved his symptoms. (Doc. 8-3 at 10.) Regarding his arm and neck pain and carpal tunnel syndrome, ALJ Havens addressed evidence that Cooper did have limited range of motion, but his examinations were within the normal limits and his strength and sensation in both lower and upper extremities remained intact. (*Id.* at 10–11.) Further, ALJ Havens reasoned that Cooper received effective treatments and ceased receiving such treatments, suggesting that, if his pain continued to be severe enough to prevent him from working, he would have continued to obtain treatments. (*Id.* at 11.)[2]  Finally, ALJ Havens pointed to Cooper's

---

[2] On this point, Cooper faults ALJ Havens' reasoning by arguing that there were insurance and workers' compensation barriers that complicated his ability to receive treatments. (Doc. 12 at 17.) But Cooper cites to a span of over 700 pages without identifying or explaining any particular circumstances beyond his broad argument. It not clear, for example, how the workers' compensation proceedings that ended in a settlement in February 2020 speak to Cooper's lack of treatments after June 2020 and beyond. (*See* Doc. 10 at 32.)

daily activities that were inconsistent with the disabling pain, depression, and inability to work he had testified about. (*Id.* at 11–12.) For example, he could walk his dogs for up to an hour, drive his girlfriend to work, drive up to sixty miles at a time, could shop on his own, handled his finances, and communicated and spent time with other people. ALJ Havens reasoned that, although these facts do no prove that he could work, the facts underlying his symptom testimony do not amount to the severity for which he complained. (*Id.* at 12.) Therefore, whether it was pain resulting from his back, neck, or arm, ALJ Havens articulated reasons for why intensity, persistence, or functionally limiting effects were not so severe as to prevent Cooper from working all together. Thus, the Court finds there was no error.

### 3. Lay Witness Testimony

Cooper argues that ALJ Havens failed to discuss lay witness statements from his son and girlfriend. (Doc. 12 at 18–20.) SSA argues that ALJ Havens was not required to discuss lay witness testimony under the same standards as medical opinions and that she adequately considered their statements. (Doc. 14 at 7–8.) Cooper disagrees and argues that ALJ Havens is not excused from discussing their statements entirely. (Doc. 15 at 8–9.)

SSA is correct that ALJs are not required to articulate how they consider nonmedical evidence using the same requirements as medical sources. *See* 20 C.F.R. § 404.1520c(d). There is an ongoing dispute about whether ALJs are still required to consider lay witness evidence in the first place. *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.4 (9th Cir. Dec. 27, 2022) (noting "it is clear they are no longer required to articulate it in their decisions"). ALJ Havens did consider the son's and girlfriend's statements when she discredited Cooper's symptom testimony. (Doc. 8-3 at 11, 14.) Even so, Cooper argues discounting lay witness statements required providing a germane reason for each witness and criticizes ALJ Havens for not considering the son's statements that Cooper required a handicapped handrail in the bathroom. (Doc. 12 at 18 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); Doc. 15 at 8.) Its not clear how using a handrail in the bathroom is enough of a persistent issue to be remotely relevant to Cooper's ability to work. But in

any event, ALJ Havens considered them consistent with Cooper's ability to complete light work and the existence of some functional limitations. *See also Hudnall v. Dudek*, No. 23-3727, 2025 WL 729701, at *3 (9th Cir. Mar. 7, 2025) (holding ALJs are not required to articulate how they considered evidence from nonmedical sources). Therefore, the Court finds that ALJ Havens did not err in considering lay witness testimony.

### 4. Vocational Testimony

At the fifth step in an ALJ's analysis, she must demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r. of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir.2010). "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* at 1162 (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993)). An ALJ "need not include all claimed impairments in h[er] hypotheticals, [but] [s]he must make specific findings explaining h[er] rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

Cooper argues that ALJ Havens erred by not included the limitations identified by Young, Cooper's son, and Cooper's girlfriend in the hypothetical question posed to the vocational expert about the availability of jobs that Cooper could perform. (Doc. 12 at 20–21; *see also* Doc. 8-3 at 49–53.) SSA did not respond to this argument.

ALJ Havens asked the vocational expert a hypothetical question based on the limitations she found were supported under her RFC analysis, including working six out of eight hours in a work day, occasionally lift twenty pounds, frequently lift and carry ten pounds, occasionally climb, stoop, kneel, crouch, and crawl, occasionally reach in all

1  directions bilaterally, frequently perform gross handling, fine feeling and fine fingering
2  bilaterally, and occasionally tolerate exposure to heights, moving machinery, temperature
3  extremes and vibrations.  (Doc. 8-3 at 50–51.)  The vocational expert concluded that
4  Cooper could not perform his past work as a service technician or plumber based on this
5  hypothetical.  (*Id.* at 51.)  But the vocation expert also testified that, while the occasional
6  reaching in all directions is limiting, there are sufficient positions available in the national
7  economy, like rental clerk, salon attendant, or usher.  (*Id.*)  Cooper's counsel proceeded to
8  ask a hypothetical with additional limitations.  (*Id.* at 52.)

9  ALJ Havens did not err in concluding there were jobs that existed in significant
10 numbers in the national economy that Cooper could have performed.  (*See id.* at 15.)  An
11 ALJ is not bound to accept as true the limitations presented by a claimant's counsel.
12 *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (noting an ALJ is free to accept
13 or reject limitations where there is substantial evidentiary support, and this is even true
14 where there is conflicting medical evidence).  As discussed, ALJ adequately addressed both
15 Young's opinion and lay witness testimony.  Substantial evidence supported the limitations
16 ALJ Havens noted in the hypothetical question.  To impose the limitations that she found
17 unsupported or inconsistent with the other medical evidence would invite the vocational
18 expert to testify regarding limitations not supported by the record, thus invite error.
19 Therefore, the Court finds ALJ Havens did not err in posing the hypothetical limitations to
20 the vocational expert.

21 **IV.   CONCLUSION**
22     Accordingly,
23     **IT IS HEREBY ORDERED** affirming the December 1, 2023 decision of the ALJ.
24     **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment
25 consistent with this Order and close this case.
26     Dated this 19th day of March, 2025.

*[signature]*
Honorable Susan M. Brnovich
United States District Judge